

# NUMBER 13-12-00188-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ROLANDO M. ROMERO,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                  Appellee.

## On appeal from the 36th District Court
## of Aransas County, Texas.

## MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant Rolando M. Romero appeals his conviction of possession of more than 50 but not exceeding 2000 pounds of marihuana, a second-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121 (West 2010). Appellant pleaded guilty, and the trial court assessed punishment at ten years' confinement in the Texas Department of

Criminal Justice, Institutional Division. By one issue, appellant argues he was deprived of his right to a speedy trial. We affirm.

## I. BACKGROUND[1]

On October 25, 2010, appellant was arrested for possession of marihuana. On April 21, 2011, he was released on a personal recognizance bond. On July 26, 2011, the State indicted appellant for the charged offense. On August 10, 2011, appellant filed a motion to dismiss on the ground that he was deprived of his constitutional right to a speedy trial. On August 15, 2011, appellant filed a motion for continuance, asking the trial court to reset the trial date from the scheduled September 12, 2011 date. The trial court granted the motion.

On October 27, 2011, the trial court held a hearing on appellant's motion to dismiss. Appellant testified that he was in jail for about six months and described the anxiety that he and his family experienced as a result of the delay. He testified that he was unemployed at the time of his arrest, and he admitted on cross-examination that the delay did not preclude his ability to find defense witnesses. The trial court found that the delay was not excessive and that any prejudice to appellant was minimal. The trial court denied appellant's motion.

On January 11, 2012, appellant filed an "Agreed Motion for Continuance," asking the trial court to reset the trial from the scheduled date of January 17, 2012. The trial

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

court granted the motion.   On February 6, 2012, the trial court called appellant's case, and appellant pleaded guilty.

## II.   SPEEDY TRIAL RIGHT

In his sole issue, appellant argues the trial court committed reversible error by denying his motion to dismiss.   Specifically, appellant contends he was deprived of his constitutional right to a speedy trial.   *See* U.S. CONST. amend. VI; TEX. CONST. art. I, §10.

### A.   Applicable Law

We review the trial court's ruling on appellant's speedy trial claim under a bifurcated standard of review:   we apply an abuse of discretion standard for the factual components, and we review de novo the legal components.   *Zamarano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002) (en banc).   Because appellant lost in the trial court on his speedy trial claim, we must presume the trial court resolved any disputed fact issues in the State's favor, and we must also defer to the implied findings of fact that the record supports.   *Id.*

The United States and Texas Constitutions each guarantee an accused's right to a speedy trial.   *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10.   The Texas Court of Criminal Appeals has outlined the law governing speedy-trial rights:

> In determining whether a criminal defendant has been denied his federal or state constitutional right to a speedy trial, a court must use a balancing test in which the conduct of both the State and the defendant are weighed. [*Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992) (en banc)].   The factors to be weighed in the balance include, but are not necessarily limited to, the length of the delay, the reason for the delay, the defendant's assertion of his speedy trial right, and the prejudice to the defendant resulting from the delay.   [*Barker*, 407 U.S. at 530].   No single factor is necessary or sufficient to establish a violation of the defendant's right to a speedy trial.   [*Id.* at 533].

3

*Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003) (the "*Barker* Factors").

**B.     *Barker* Factors**

**1.   Length of Delay**[2]

The length of delay is measured from the time the defendant was arrested or formally accused, *id.* (citing *U.S. v. Marion*, 404 U.S. 307, 313 (1971)), until trial or the defendant's demand for a speedy trial. *Zamarano*, 84 S.W.3d at 648. "The length of delay is, to some extent, a triggering mechanism, so that a speedy trial claim will not be heard until passage of a period of time that is *prima facie* unreasonable under the circumstances." *Shaw*, 117 S.W.3d at 889; *see Barker*, 407 U.S. at 530; *Zamarano*, 84 S.W.3d at 648. The length of delay that will trigger such an inquiry is necessarily dependent on the peculiar circumstances of each case. *Barker*, 407 U.S. at 530–31. The delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge. *Id.* at 531.

What constitutes a presumptively unreasonable delay remains undefined. *See Cantu v. State*, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008). Courts have recognized that a delay of eight months will be unreasonable and adequate to trigger the *Barker* inquiry. *Bosworth v. State*, No. 06-12-00058-CR, 2013 WL 563321, at *2 (Tex.

---

[2] Appellant only complains about the *pre-indictment* delay. Accordingly, we need not consider whether any post-indictment delay violated the speedy trial clause. *Brown v. State*, 163 S.W.3d 818, 822 (Tex. App.—Dallas 2005, pet. ref'd); *see Zamarano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002) (en banc); *see also United States v. MacDonald*, 456 U.S. 1, 7–9 (1982) (holding speedy-trial clause provides protection for delay between arrest and indictment and between indictment and trial).

Even including the post-indictment delay, we would not find any speedy-trial violation because: (1) although the delay of about sixteen months is certainly sufficient to trigger a full *Barker* inquiry, (2) appellant contributed to the post-indictment delay by filing two motions for continuance, (3) appellant did not reassert his speedy-trial claim, which was framed as a motion to dismiss, and (4) there is no evidence of prejudice resulting from appellant's requested post-indictment delay. On balance, the four factors weigh against finding a speedy-trial violation even if the delay between appellant's arrest and trial is considered.

App.—Texarkana Feb. 15, 2013, pet. ref'd) (citing *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992)); *see, e.g.*, *Moreno v. State*, 987 S.W.2d 195, 199 (Tex. App.—Corpus Christi 1999, pet. ref'd).

The State indicted appellant approximately nine months after it arrested appellant. Given this Court's precedent, we presume a nine-month delay is sufficient to trigger a speedy-trial inquiry. *See Moreno*, 987 S.W.2d at 199. We note, however, that the delay only slightly exceeded the minimum necessary to trigger the inquiry. Further, we would not characterize appellant's case as a "run-of-the mill" possession case as advanced by appellant during his hearing. Based on the investigative report that the trial court admitted at appellant's request, appellant was arrested for possession of over seventy pounds of marihuana, and his arrest was the result of an ongoing investigation involving a joint operation between the Texas Department of Public Safety and the Aransas County Sheriff's Department. The investigation included an undercover operative and at least one confidential informant. According to a confidential informant, the person who was arrested with appellant and that person's "associates" were working for the Gulf Cartel drug gang. Accordingly, we weigh this factor only slightly against the State.[3] *See State v. Fisher*, 198 S.W.3d 332, 338 (Tex. App.—Texarkana 2006, pet. ref'd) ("We do not believe this ten-month period is such a long time that it should be accorded more than a slight weight against the State.").

---

[3] In determining whether the factor should weigh heavily against the State, courts look at the time period involved and the complexity of the case. *See Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003) (holding that because 38 month delay far exceeded the minimum needed to trigger the inquiry, the first factor weighed "heavily" in favor of finding a speedy trial violation); *Zamarano*, 84 S.W.3d at 649 (holding a delay of two years and ten months was excessive for a "plain-vanilla DWI case").

### 2. Reasons for the Delay

Different weights are assigned to the various reasons offered to explain a delay. *See Barker*, 407 U.S. at 530; *Shaw*, 117 S.W.3d at 889; *Zamarano*, 84 S.W.3d at 649. For example, a deliberate attempt by the State to delay trial should be weighed heavily against the State, whereas the State's failure to timely call a case due to crowded court dockets weighs less heavily against the State. *See Barker*, 407 U.S. at 530; *Shaw*, 117 S.W.3d at 889.

The State did not give any reasons for the delay at the hearing. Rather, the State argued that the delay was not constitutionally excessive. "In the absence of an assigned reason for the delay, the court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay." *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003). We weigh the unexplained delay of nine months against the State, but not heavily. *Abraham v. State*, 330 S.W.3d 326, 332 (Tex. App.—Dallas 2009, pet. dism'd) (citing *Dragoo*, 96 S.W.3d at 314).

### 3. Assertion of Right

Whether and how a defendant asserts his speedy-trial right is closely related to the other three factors because the strength of his efforts will be shaped by them. *Barker*, 407 U.S. at 531; *Cantu*, 253 S.W.3d at 282–83; *Zamorano*, 84 S.W.3d at 651. The defendant's assertion of his speedy-trial right is entitled to strong evidentiary weight in determining whether he was deprived of the right. *Barker*, 407 U.S. at 531–32; *Zamorano*, 84 S.W.3d at 651. Although a defendant cannot file a speedy-trial motion until formal charges are made, one can assert the right in other ways. *Cantu*, 253

6

S.W.3d at 283. In this regard, the manner of assertion is important. "Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Id.*

Appellant filed a motion to dismiss on speedy-trial grounds about fifteen days after he was indicted. There is no record evidence that appellant pressed his speedy-trial claim prior to the post-indictment motion to dismiss. At the hearing, appellant's attorney claimed that she filed a motion to dismiss for failure to indict on May 10, but there is no evidence of that motion in the record. Likewise, appellant testified that he sent the trial court two letters asking the court to do something about his case, but the letters are not included in the record. Although the trial court acknowledged appellant's prior communications, the court noted that the letters complained of appellant's attorney and requested release on a personal bond; the trial court did not mention the existence of a speedy-trial type of claim in the letters.

We cannot presume that the absence of the motion or the letters would support the trial court's ruling. *See Amador v. State*, 221 S.W.3d 666, 677 (Tex. Crim. App. 2007); *Rowell v. State*, 66 S.W.3d 279, 282 (Tex. Crim. App. 2001) (en banc). "[R]eviewing courts can assess only the evidence that is actually in the appellate record." *Amador*, 221 S.W.3d at 673. As such, the record does not show that appellant asserted his speedy-trial right during the pre-indictment period.

"Because appellant never asked for a speedy trial—he asked only for dismissal—it was incumbent upon him to show that he had tried to get the case into court so that he could go to trial in a timely manner." *Cantu*, 253 S.W.3d at 284. Appellant failed to

show any pre-indictment speedy-trial assertions, and when he did finally assert his speedy trial grounds post-indictment, he sought only an outright dismissal. *See id.* at 285; *Shaw*, 117 S.W.3d 883 (determining that defendant's failure to assert his speedy-trial right during lengthy delay weighed heavily against the defendant). We conclude this factor weighs against appellant.

### 4. Prejudice

When a court analyzes prejudice to the defendant, it must do so in light of the interests that the speedy-trial right was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize the accused's anxiety and concern; and (3) to limit the possibility that the accused's defense will be impaired. *Barker*, 407 U.S. at 532; *Cantu*, 253 S.W.3d at 285; *Shaw*, 117 S.W.3d at 890; *Zamorano*, 84 S.W.3d at 652. Of these types of prejudice, the last is the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532; *Cantu*, 253 S.W.3d at 285; *Dragoo*, 96 S.W.3d at 315. The defendant must make some showing of prejudice, although a showing of actual prejudice is not required. *State v. Munoz*, 991 S.W.2d 818, 826 (Tex. Crim. App. 1999) (en banc). When the defendant makes a *prima facie* showing of prejudice, the burden shifts to the State to show the defendant suffered "no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Id.* (quoting *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973)).

Appellant was incarcerated for about six months before he was released on a personal bond. If he had not received full credit on his sentence for the time served, the

8

pretrial incarceration may have been oppressive. *See Starks v. State*, 266 S.W.3d 605, 612 (Tex. App.—El Paso 2008, no pet.); *see also Gray v. King*, 724 F.2d 1199, 1204 (5th Cir. 1984); *Christmas v. State*, Nos. 02-08-00004-CR & 02-08-00005-CR, 2009 WL 579278, at *8 (Tex. App.—Fort Worth Mar. 5, 2009, pet. ref'd) (mem. op., not designated for publication). Inasmuch as appellant pleaded guilty and received full credit for the time he spent in jail, his six-month pretrial incarceration was not oppressive. *See Starks*, 266 S.W.3d at 612–13; *see also Blaylock v. State*, 259 S.W.3d 202, 210 (Tex. App.—Texarkana 2008, pet. ref'd) (holding five-month pretrial incarceration was not oppressive and "no more than ordinary and inevitable delay.").

Appellant testified about the anxiety and concern his family experienced because of the pretrial delay. Appellant stated that the incarceration precluded him from working to support his family and caused stress to both him and his family. Appellant, however, "failed to introduce any evidence that the anxiety he suffered either was abnormal or caused his case prejudice." *Starks*, 266 S.W.3d at 613; *see Shaw*, 117 S.W.3d at 890 (emphasizing defendant failed to show that his pretrial delay "caused him any unusual anxiety or concern . . . ."). "[E]vidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation." *Cantu*, 253 S.W.3d at 286. Moreover, appellant admitted that he was unemployed when he was arrested, which cuts against a claim of anxiety. *Cf. Zamorano*, 84 S.W.3d at 654 (noting, among other things, that the delay interfered with the appellant's job).

9

Finally, considering the last and most important prong—whether a delay impaired the preparation of a defense—appellant testified that the delay did not damage his ability to find any witnesses on his behalf. Appellant presented no other testimony or evidence indicating how the delay hindered his defense. Reviewing the relevant subfactors, we conclude the fourth *Barker* factor weighs against appellant.

## C. *Barker* Balance

We must now balance the four factors. *Barker*, 407 U.S. at 533; *Shaw*, 117 S.W.3d at 891. The first and second factors weigh against the State, but only slightly. The third and fourth factors, however, weigh against appellant. Balanced together, the four factors weigh against finding a violation of appellant's right to a speedy trial. We overrule appellant's sole issue on appeal.

## III. CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
24th day of October, 2013.

10